People of the State of Illinois, Plaintiff-Appellee, v. Joseph Pohl, Defendant-Appellant.

Gen. No. 10,524.

Fourth District.

April 9, 1964.

Paul E. Karlstrom, of Champaign, for appellant.

Robert J. Waaler, State's Attorney, of Urbana (Andrew Stecyk and Jack Waaler, Assistant State's Attorneys, of counsel), for appellee.

SPIVEY, J.

Defendant, Joseph Pohl, was convicted in the County Court of Champaign County of driving a motor vehicle on a public highway while his operator's license was revoked, under the provisions of Chapter 6, Article 3, section 6–303 of the Illinois Motor Vehicle Law, (Ill Rev Stats c 95½, § 6–303). He was sentenced to the Champaign County jail for a period of seven days and ordered to pay the costs of prosecution.

On February 7, 1963, the State's Attorney of Champaign County, Illinois, filed an information charging the defendant, Pohl, with the aforesaid offense.

To this information the defendant filed a motion to dismiss alleging the charge was barred by virtue of Article 3, section 3–4(b) of the Criminal Code of 1961, (Ill Rev Stats c 38, § 3–4(b).

The motion to dismiss was denied by the Court and the cause heard on a stipulation of facts before the Court without a jury.

Briefly the stipulation provided that defendant's operator's license had been revoked by order of the Secretary of State on November 20, 1961, and had not been modified or changed prior to December 4, 1962. On December 13, 1962, the defendant was served with a summons to appear before a Justice of the Peace in Champaign, Illinois, to answer a charge of driving without a valid operator's license allegedly committed on December 4, 1962.

The defendant advised the State Police officer serving the summons that his operator's license had been revoked and that he had not reapplied for a license

233

after the expiration of the one year period from the date of such revocation.

On December 19, 1962, when the defendant appeared before the Justice of the Peace he entered a plea of guilty to the offense of driving without a valid operator's license and was assessed a fine, which he paid. Prior to the entry of his plea before the Justice of the Peace he advised the Justice that his operator's license had been revoked and that he had not reapplied for a license after the expiration of the one year period from the date of such revocation.

Neither the State's Attorney of Champaign County nor any member of his staff was advised of the offense of driving without a valid operator's license prior to defendant's conviction.

The State's Attorney of Champaign County was on January 26, 1962, informed by the Secretary of State that said conviction occurred while the defendant's operator's license was revoked. The State's Attorney thereupon filed the information in the County Court of Champaign County charging the defendant with driving a motor vehicle on December 4, 1962, when his operator's license was revoked. This charge was based upon the same conduct for which the defendant had been convicted before the Justice of the Peace on December 19, 1962.

The sole question as posed by counsel for the defendant is whether or not the disclosure of the revocation of defendant's operator's license to the State Police officer prior to his conviction on December 19, 1962, was knowledge to a "proper prosecuting officer" as contemplated by Article 3, section 3-3 of the Criminal Code of 1961.

Article 3, section 3-3 of the Criminal Code of 1961 provides as follows:

"(a) When the same conduct of a defendant may establish the commission of more than one offense,

234

the defendant may be prosecuted for each such offense.

"(b) If the several offenses are known to the proper prosecuting officer at the time of commencing the prosecution and are within the jurisdiction of a single court, they must be prosecuted in a single prosecution, except as provided in subsection (c), if they are based on the same act.

"(c) When 2 or more offenses are charged as required by subsection (b), the court in the interest of justice may order that one or more of such charges shall be tried separately."

The pertinent provisions of section 3–4 of the Criminal Code of 1961 provides as follows:

"(b) A prosecution is barred if the defendant was formerly prosecuted for a different offense, or for the same offense based upon different facts, if such former prosecution:

"(1) Resulted in either a conviction or an acquittal, and the subsequent prosecution is for an offense of which the defendant could have been convicted on the former prosecution; or was for an offense with which the defendant should have been charged on the former prosecution, as provided in section 3–3 of this Code (unless the court ordered a separate trial of such charge); or was for an offense which involves the same conduct, unless each prosecution requires proof of a fact not required on the other prosecution, or the offense was not consummated when the former trial began."

The defendant in support of his theory for reversal has cited a number of cases to the effect that the primary object in construing a statute is to ascertain and give effect to the intention of the enacting legislative body, and that penal statutes are to be strictly construed in favor of the defendant so that their oper-

ation will not be extended beyond the clear import of the language used.

These general propositions of statutory construction are not questioned and we have given full weight to those well established principles.

Defendant further cites a number of authorities which have defined the words "prosecution" and "prosecute," including City of Champaign v. Hill, 29 Ill App2d 429, 173 NE2d 839.

In the Hill case the court, speaking through Mr. Justice Reynolds, states: "Summing up the various constructions our courts and those of other jurisdictions have placed upon the words 'prosecute' and 'prosecution' no clear-cut definition can be reached." The court then went on to analyze State of Illinois v. Froelich, 316 Ill 77, 146 NE 733, and People v. Jilovsky, 334 Ill 536, 166 NE 108, and concluded that the word "prosecution" in those cases would involve only the formal accusation of the offender by means of an information. In further discussing the case of Wall v. Chesapeake & O. Ry. Co., 290 Ill 227, 125 NE 20, the court concluded that that case stood for the proposition that there was a separation between the institution of a suit and the prosecution of the suit.

We find little comfort in any of the cases defining the words "prosecution" or "prosecute," varied as they are, for in none of those cases has the expression been used as being definitive of the word "officer."

What constitutes a "proper prosecuting officer" has not so far as the briefs disclose or as a result of our independent research ever been defined. Strangely enough we have been unable to bring to light even a definition of "prosecuting officer."

In approaching the question before us we must first of all determine what the General Assembly intended when they used the word "officer" and then apply the descriptive words of "proper" and "prosecuting."

236

Article V, Section 24 of the Constitution of the State of Illinois of 1870 defines the word "office" as follows: "An office is a public position created by the constitution or law, continuing during the pleasure of the appointing power, or for a fixed time, with a successor elected or appointed. . . ."

In considering this section of the constitution, the Supreme Court in a landmark decision said, in Fergus v. Russel, 270 Ill 304, 322, 110 NE 130, "This definition contains two essential elements, both of which must be present in determining any given position to be an office: (1) The position must be a public one, created either by the constitution or by law; and (2) it must be a permanent position with continuing duties. To determine whether the first element is present we have but to look to our constitution and our statutes to see whether the particular position under consideration has been created by the constitution or by law. An office is created by law only as a result of an act passed for that purpose. The mere appropriation by the General Assembly of money for the payment of compensation to the incumbent of a specified position does not have the effect of creating an office or of giving such incumbent the character of an officer, (People v. McCullough, 254 Ill 9, 98 NE 156), as an office cannot be created by an appropriation bill. To ascertain whether the second element is present it is necessary to determine the character of the position. This is not determined by the method in which the occupant or holder of the position is selected,—whether by appointment or election. If the duties of the office are continuing and it is necessary to elect or appoint a successor to the several incumbents, then the second element is present whether the incumbent be selected by appointment or by election, and whether the incumbent be appointed during the pleasure of the appointing power or be elected for a fixed term."

237

It was said in Hall v. Cook County, 359 Ill 528, 195 NE 54, " 'An office is a public position, created by the constitution or law, continuing during the pleasure of the appointing power, or for a fixed time, with a successor elected or appointed. An employment is an agency, for a temporary purpose, which ceases when that purpose is accomplished.' Mechem on Public Officers, in discussing the meaning of the term 'office' (par 4), defines an office as follows: 'The most important characteristic which distinguishes an office from an employment or contract is, that the creation and conferring of an office involves a delegation to the individual of some of the *sovereign functions of government,* to be exercised by him for the benefit of the public; *that some portion of the sovereignty of the county, either legislative, executive or judicial, attaches for the time being, to be exercised for the public benefit.* Unless the powers conferred are of this nature the individual is not a public officer.' " (Emphasis supplied.)

The term "officer" is succinctly defined in 67 CJS, Officers, section 1.b. as follows: "In general an officer is one who holds, or is an incumbent of, an office, or who performs the duties of an office, or is lawfully invested with an office. 'Officer' is inseparably connected with an 'office'; there can be no officer without an office. One who is engaged to render service in a particular transaction is not an officer in the ordinary acceptance of the term."

Article VI, Section 22 of the Constitution of the State of Illinois of 1870 provides for the election of State's Attorneys. It provides, "At the election of members of the General Assembly in the year of our Lord 1872, and every four years thereafter, there shall be elected a State's Attorney in and for each county in lieu of the State's Attorneys now provided by law, whose term of office shall be four years."

As such the State's Attorney has been held to be a constitutional officer (People ex rel. Kunstman v. Shinsaku Nagano, 389 Ill 231, 59 NE2d 96), and a county officer (Ashton v. Cook County, 384 Ill 287, 51 NE2d 161).

Assistant State's Attorneys are provided for by chapter 53, section 18, Ill Rev Stats. In People ex rel. Landers v. Toledo, St. L. & W. R. Co., 267 Ill 142, 107 NE 879, it was held that assistant state's attorneys are officers vested with the exercise of some portions of the sovereign power of the State.

It follows that State's Attorneys and their assistants would properly be classified as officers in that portion of the words "proper prosecuting officer" contained in Article 3, section 3-3 of the Criminal Code of 1961.

Turning our attention now to the question of the meaning to be afforded the word "prosecuting" we observe as follows:

In 22 CJS, Criminal Law, Section 305, it is stated, "The commonly accepted meaning of 'prosecutor' is one who takes charge of the case and performs the function of the trial lawyer for the people as does a district attorney; . . . ."

In 31 CJ, Indictments and Informations, section 41, page 582 it is said, "A 'prosecutor' within the meaning of the statutes under consideration is the person who appears as such, and not merely one who makes a complaint and appears as a witness before the grand jury. . . ."

Article 2, section 2-16 of the Criminal Code of 1961 defines the word "prosecution" as, " 'Prosecution' means all legal proceedings by which a person's liability for an offense is determined, commencing with the return of the indictment or the issuance of the information, and including the final disposition of the case upon appeal."

239

We find this definition in no way limits our understanding of the meaning of the word "prosecuting" contained in Article 3, section 3-3. In fact, it, in our judgment sustains our understanding of the meaning of that word.

The discretionary powers of the state's attorney's office as they might particularly apply to the instant statute (Article 3, section 3-3) may be gleaned from the following observations.

In Wilson v. County of Marshall, 257 Ill App 220, it was said, "At common law, the prosecuting attorney has absolute control of criminal prosecutions."

18 CJ, District and Prosecuting Attorneys, section 42, page 1315 states, "The prosecuting attorney has control of criminal proceedings in the trial court, the prosecutor having no right of control."

In Jones v. State, 179 P2d 484 (Okla), in considering multiple offenses growing out of a single act it is stated that the county attorney has the discretion to determine under which statute charges would be preferred.

Again in District of Columbia v. Buckley, 128 F2d 17, the court said, in considering the statutory definition of offenses growing out of the same transaction, "But the definition of offenses is for the legislative authority, and the determination of whether and when to prosecute for more than one growing out of the same transaction is a *matter of policy for the prosecuting officer* and not for the determination of the courts. Moreover, while under some circumstances it might be unfair to prosecute for more than one offense, under others the danger to the public from the conduct of an offender might be such as well to warrant his prosecution for all offenses committed." (Emphasis supplied.)

Webster's Third New International dictionary defines the word "proper" as marked by suitability, rightness or appropriateness; fit—correct.

240

Article 2, section 2–12 defines the word "offense" as " 'Offense' means a violation of any penal statute of this State." Article 2, section 2–22, in defining the word "statute" provides, " 'Statute' means the Constitution or an Act of the General Assembly of this State."

█ As limited by the definitions of "offense" and "statute" we conclude that Article 3, section 3–3 of the Criminal Code of 1961 applies only in the case of offenses prohibited by the Statutes of the State of Illinois.

In the construction and application of a statute words are to be given their generally accepted meaning, unless there is something in the Act indicating that the General Assembly used them in a different sense. (Stiska v. City of Chicago, 405 Ill 374, 90 NE2d 742.) To like effect People v. Jensen, 392 Ill 72, 64 NE2d 1.

█ In the light of what we have said we come to the inescapable conclusion that the General Assembly in enacting Article 3, section 3–3 intended to refer to the State's Attorney and his properly constituted assistants of the county in which the offense was committed as "proper prosecuting officer."

We believe that such holding will give effect to the objects and purposes of the General Assembly and will do no violence to the objects and purposes desired.

To further extend the application of the words "proper prosecuting officer" would take away from and place in the hands of others the duties and prerogatives of the State's Attorney and his assistants.

A State's Attorney must be trained in the law and licensed to practice that art. (People ex rel. Elliott v. Benefiel, 405 Ill 500, 91 NE2d 427.)

While it has never been judicially determined that the office of assistant state's attorney authorized by Ill Rev Stats, chapter 53, section 18, is required to be so licensed, however if the same reasoning were to be

followed as expressed in the Benefiel opinion assistant state's attorneys would be required to hold such a license.

The State's Attorney's duties require that he investigate the facts and from such facts determine whether or not an offense has been committed against the People.

It would be quite improbable that a person who lacked training in the legal profession would be able to determine whether a certain set of facts did or did not constitute a certain offense or offenses. It is the State's Attorney's duty to see that justice is done not only to the public at large but to the accused as well. To place in unskilled hands such discretionary power could very likely result in an injustice to the public or the accused.

The countless examples of multiple offenses resulting from violations of two or more laws by a single act or transaction are too numerous to relate.

Slight reference has been made by the defendant that the trial court refused defendant's offer in evidence of the testimony or affidavit of two members of the Joint Committee to Revise the Illinois Criminal Code.

█ We are confused as to when such alleged offer of proof was made in the course of the prosecution. Regardless of when such offer was made this court would be unable to consider such alleged error.

Without passing upon the competency of such evidence, it has been the long established rule in this State that that which is expected to be proved by the witness must appear in the record. (Brewer v. National Union Building Association, 64 Ill App 161; Maxwell v. Habel, 92 Ill App 510; McLeod v. Andrews & Johnson Co., 116 Ill App 646; Ragen v. Bennigsen, 10 Ill App2d 356, 135 NE2d 128.)

Nowhere in the record is it disclosed what the testimony would have been. The burden was on the de-

242

fendant to show what transpired at the hearing by preserving a report of proceedings and making it a part of the record on appeal. (Cornmesser v. Laken, 43 Ill App2d 324, 193 NE2d 337.)

██ We conclude that knowledge on the part of the State Police officer that the conduct of the defendant established the commission of more than one offense was not knowledge of such facts by a "proper prosecuting officer."

The judgment of the County Court of Champaign County is affirmed.

Affirmed.

CROW, P. J. and SMITH, J., concur.