People of the State of Illinois ex rel. John S. Rusch, Appellee, v. Max Freedman et al., Appellants.

Gen. No. 39,925.

Opinion filed October 26, 1938. Rehearing denied November 9, 1938.

THOMAS MARSHALL, of Chicago, for appellants.

THOMAS J. COURTNEY, State's Attorney, for appellee; JOHN F. CASHEN, JR., of Chicago, of counsel.

MR. JUSTICE HEBEL delivered the opinion of the court.

This is an appeal by the defendants from an order entered by the court on August 3, 1937, finding the defendants guilty of misconduct and misbehavior as

officers of the county court of Cook county and of contempt of court while acting as judges and clerks of election at a primary held on April 14, 1936, in the 47th precinct, of the 20th ward in Chicago, county of Cook and State of Illinois, and sentencing Max Freedman and Jack Werner for contempt of court to one year in the county jail, and Henry Lieberman to six months in the county jail.

A verified petition was filed by the chief clerk of the board of election commissioners of the city of Chicago, from which it appears that on April 14, 1936, a primary election was held in the city of Chicago, county of Cook and State of Illinois, for the nomination by the chief political parties of candidates for office to be voted for on the first Tuesday after the first Monday in November of said year, and for other purposes as prescribed by law.

It also appears that certain misconduct and misbehavior therein alleged of the said defendants as such judges and clerks of said primary election, constituted contempt of court, and it further appears from the allegations of the petition that the defendants, while serving and acting as judges and clerks of said election in said precinct, did knowingly, fraudulently and unlawfully make a false canvass, tally, proclamation and return of the votes cast in said precinct, and also unlawfully permitted persons to vote more than once, and further permitted persons not qualified to vote and persons to vote whose names had been erased as registered voters at said primary.

It further appears from the petition that the defendants permitted persons not registered to vote, recorded the names of persons who did not vote, gave assistance to voters not needing assistance, permitted one judge of election to go into the booth with a voter, permitted liquor in the polling place, and also allowed persons to handle ballots other than the defendants, and permitted persons to alter ballots, and thereby

were guilty of corrupt and fraudulent conduct as judges of election in said precinct.

By the petition the court was requested to enter an order and rule commanding the defendants to appear in court at the time designated in said order.

Thereafter, on April 19, 1937, the defendants filed a petition and affidavit for a change of venue, in which they recited they feared they would not receive a fair trial in the said court because the judge thereof was prejudiced against them, which knowledge came to them April 15, 1937. The motion for a change of venue was denied. A further motion of the defendants to strike the petition and affidavit was considered by the court and denied.

It appears from the evidence that on April 14, 1936, about six o'clock a. m. the only precinct official who appeared for duty was Elsa Nye, a judge. As voters came in to vote she solicited Max Freedman and Lieberman and Werner to act as judges of election, and she swore them in as judges on the morning in question.

There is evidence in the record of witnesses who appeared and cast their ballots, assisted by officials of the election board, and from the testimony of these witnesses one of the judges went into the booth with them for the purpose of aiding them in casting their ballots.

George Factor and James Gold were called as witnesses. They testified they attended the primary election on the day in question as watchers, and during the course of their presence at this polling place they made a memorandum of what took place, and used the memorandum in making a report of the occurrences, which was delivered to a Mr. McQueeny, who had hired them for the purpose of making a note of the occurrences at the polling place while they were present as watchers; that they were required to rewrite their reports in order that they might receive the compensation promised them for the day's work. At the close

of their evidence the court, as to one of the witnesses, commented that they were unable to get anywhere with the witness and the court thought he was shielding someone and had merely written a fictitious report to get paid for it. At the conclusion of the hearing the attorney, Mr. Cashen, who represented the board of election commissioners as special attorney, made this statement:

"At this time I withdraw the report of the watchers that I asked be admitted in evidence. I might state I am not offering or relying on any evidence no matter how slight of the two watchers that were called here. (Factor and Gold) It would only really be on the recount as made, in the Election Commissioners."

There is evidence in the record that upon an examination of the poll books and registers it appears that ballots were cast more than once by or in the names of the following persons:

| Name | Address | Poll Book Line No. |
|---|---|---|
| David Sorella | 718 W. 14th St. | 431 both books |
| David Sorrella | 714 W. 14th St. | 382 both books |
| Loretta Johnson | 832 W. 14th St. | 378 both books |
| Loretta Johnson | 832 W. 14th St. | 411 both books |
| Mrs. Mary Cunningham | 1410 S. Halsted St. | 107 both books |
| Mrs. Mary Cunningham | 1410 S. Halsted St. | 167 both books |
| Mrs. Esther Lieberman | 1340 S. Newberry St. | 220 both books |
| Mrs. Esther Lieberman | 1340 S. Newberry St. | 56 both books |
| Fletcher Bullock | 711 W. 14th St. | 367 both books |
| Fletcher Bullock | 711 W. 14th St. | 433 both books |
| Dan Bolden | 832 W. 14th St. | 388 both books |
| Dan Bolden | 832 W. 14th St. | 361 both books |
| Clara Jackson | 1415 Newberry | 386 both books |
| Clara Jackson | 1415 Newberry | 418 both books |
| Ray Smith | 1411 S. Halsted St. | 432 both books |
| Ray Smith | 1411 S. Halsted St. | 372 both books |
| Della Harris | 832 W. 14th St. | 31 both books |
| Della Harris | 832 W. 14th St. | 374 both books |
| Della Harris | 832 W. 14th St. | 423 both books |

Ballots were cast in the name of the following persons who were not registered voters:

| Name | Address | Poll Book Line No. |
|------|---------|-------------------|
| Sam Rubin | 1338 Union Ave. | 191 both books |
| Alex Carter | 1415 Newberry | 344 both books |
| Milton Jones | 832 W. 14th St. | 35 both books |

Further there is evidence that persons were voted in the names of the following persons whose names had been erased from the official registers:

| Name | Address | Poll Book Line No. |
|------|---------|-------------------|
| Abe Kramer | 720 Barber St. | 206 both books |
| Anna Smith | 711 Liberty St. | 311 both books |
| Ethel Snuggs | 719 Liberty St. | 290 both books |

There was offered in evidence a summary of a recount of the ballots cast in the 47th precinct of the 20th ward at the primary election held on April 14, 1936, from which it appears the voters casting a Democratic ballot numbered 274, and those casting a Republican ballot, 163, making the total number of ballots cast 437. Forty-two of the Democratic ballots cast were not initialed, but were counted by the judges of election on the night of April 14, 1936. It also appears that the judge who served on that particular day was one Freedman, who was a candidate as a delegate to the Republican National Convention, and that Lieberman had served previously as a Republican judge of election and testified he did not know he had been removed as a judge, and the third judge, Werner, made application to be appointed as clerk of election, which application was filled out by his brother-in-law, and rejected.

It is clear from the record that the ballots cast show a discrepancy in that the ballots were not properly

tabulated, and the court was fully justified in reaching the conclusion that fraud was committed by the judges at the election.

The only objections offered by the defendants to the admission of the resume of the ballots which were recounted in the precinct in which the defendants officiated as judges of election were: (1) The ballots were not admissible because the statute requires they be destroyed; (2) that the resume and the ballots were documentary evidence and not oral evidence; and (3) that no election contest was pending. The objections were overruled and the resume of the recount of the ballots in evidence shows that 42 Democratic ballots cast were not initialed. The Primary Election Law, ch. 46, par. 415, sec. 51, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 43.434], provides, in part:

". . . No primary ballot, without the endorsement of the judge's initials thereon, shall be counted.

"Any judge wilfully omitting to endorse his initials on a primary ballot, as required by this Act, or any person not authorized so to do who initials a primary ballot knowing that he is not so authorized, shall be guilty of a misdemeanor and, upon conviction thereof, shall be punished by a fine of not exceeding $200 for each offense or such judge may be prosecuted for contempt as an officer of the County Court. Any person who is convicted of said offense shall be disfranchised for a term of not more than five years, and forfeit his right to hold any elective or appointive office in this State for a term of not more than five years, in the discretion of the court."

From this provision it is evident the court in this contempt proceeding had jurisdiction to pass upon the question of whether the defendants violated the provision of the Primary Election Law.

It appears from the resume of the recount that there was a discrepancy between the ballots cast for the Democratic candidates and the votes actually re-

ceived by the several candidates. The total loss of votes tallied for the various candidates on the Democratic ticket ranged from 1 to 143, and it was from the tabulation of the recount that the court considered this and other evidence and determined that the defendants were guilty as charged and fixed the punishment accordingly.

Several questions have been called to our attention upon which the courts have passed, one of which is the denial of the defendants' motion for a change of venue. This question has been considered by the courts contrary to the views expressed by these defendants for the reason that the courts have construed the provision of the Change of Venue Act as not applying to cases in which the question of contempt such as we have before us, is involved. *People ex rel. Rusch v. Kotwas,* 363 Ill. 336; *People ex rel. Rusch v. Savaiano,* 293 Ill. App. 515; *People ex rel. Rusch v. Williams,* 292 Ill. App. 228; *People ex rel. Rusch v. Sulli,* 296 Ill. App. 639 (Abst.). And again the point has been raised in this case and passed upon whether oral evidence is the only evidence that will be considered by the court in an action of this character in determining the violation charged against the defendants, who were acting as judges and clerks of election.

The appealed cases in which the court has considered this question contrary to the contention of the defendants are: *People ex rel. Rusch v. Savaiano,* 293 Ill. App. 515, and *People ex rel. Rusch v. Sulli,* 296 Ill. App. 639 (Abst.).

Other questions are argued, but after considering the record in this case we believe the court was fully justified in finding the defendants guilty and fixing the penalty as stated in this opinion. For the reason that no error appears in the record the judgment is affirmed.

*Judgment affirmed.*

HALL, P. J., and DENIS E. SULLIVAN, J., concur.