People of the State of Illinois ex. rel. John S. Rusch, Appellee, v. Margaret Cunningham et al., Appellants.

Gen. No. 40,896.

Opinion filed January 20, 1941.
Rehearing denied February 5, 1941.

SIMON HERR and MAYER GOLDBERG, both of Chicago, for appellants.

THOMAS J. COURTNEY, State's Attorney, for appellee; JOHN F. CASHEN, JR., of Chicago, of counsel.

MR. JUSTICE MATCHETT delivered the opinion of the court.

The respondents, who April 12, 1938, served as judges and clerks of election in the 58th precinct of the 24th ward of Chicago, have been tried and found guilty of contempt of court for alleged misbehavior as such primary judges or clerks. (See Laws of 1927, p. 459, § 17; Smith Hurd Ann. Stats., ch. 46, par. 381, p. 709; Ill. Rev. Stat. 1939, ch. 46, § 17, par. 381 [Jones Ill. Stats. Ann. 43.400].) Pallard, who acted as Republican judge, was sentenced to serve one year; Mrs. Cunningham and Feinberg, Democrat judges, were sentenced to serve six months; and Frish and Ebert,

Democrat and Republican clerks, respectively, were sentenced to serve three months, all in the county jail. They appeal and with other alleged errors argue that the trial judge by reason of personal interest was disqualified from hearing the charges against them. Because of one of the points argued in the briefs the decision of this case has awaited the decision of the Supreme Court in *Stockholm v. Daly*, 374 Ill. 441.

When first arrested respondents joined in a petition for a change of venue under the statute. (Ill. Rev. Stat. 1939, ch. 146, § 17 [Jones Ill. Stats. Ann. 107.332].) Their prayers were denied. This court has held in a number of cases that the act is not applicable. The Supreme Court in some of these has denied leave to appeal. *People ex rel. Rusch v. Williams*, 292 Ill. App. 228; *People ex rel. Rusch v. Savaiano*, 293 Ill. App. 515; *People ex rel. Rusch v. Sulli*, 296 Ill. App. 639 (Abst.); *People ex rel. Rusch v. Freedman*, 297 Ill. App. 73, and *People ex rel. Rusch v. Levin*, 305 Ill. App. 142, 26 N. E. (2d) 895.

Thereafter, respondents made a motion for the assignment of the cause to another upon the ground of disqualification of the trial judge. The briefs of the People argue this motion as if it were a second application for change of venue under the statute. It is not. The theory of the motion was that irrespective of the statute the cause should be assigned to another because the trial judge was disqualified under the rules of the common law and as a matter of common right, because he was a candidate at the primary concerning which these respondents were accused. The fact that the legislature did not see fit to make the change of venue statute applicable does not necessarily deprive respondents of their right to have the accusation against them heard by a qualified judge. This is more apparent if we reflect that § 17 dispenses with formal pleadings and with trial by jury.

In 1701, Lord Holt said:

"If an act of Parliament should ordain that the same person should be party and judge, or which is the same thing, judge in his own cause, it would be a void act of Parliament." 12 Mod. Reps. 688.

In *Medlin v. Taylor,* 101 Ala. 239, Medlin filed a petition for a writ of mandamus directed to Taylor, who was judge of the probate court of his county, to compel him to hear a case involving the contest of an election to the office of tax collector of the county. Taylor refused to hear and determine the same for the reason that he (Taylor) and the contestee, who was one Esslinger, were candidates at the same election—Esslinger for the office of tax collector and Taylor for the office of probate judge. Taylor's election was at the time being contested before the judge of the circuit court upon grounds, causes and for reasons similar to the reasons specified by Medlin in his contest against Esslinger. A rule *nisi* was entered, and upon the coming in of the respondent he demurred to the petition on two grounds; first, that it appeared therefrom that he was "for legal cause incompetent," and, secondly, because in the jurisdiction with which by law he was clothed Judge TAYLOR had entered a judgment declaring his incompetency. The court said:

"That Judge Taylor did not have a disqualifying *interest* in the result of the case, within the provisions of our constitution and statutes, is virtually confessed in the argument of counsel, and can not be doubted. To come within these inhibitions the interest must be a *pecuniary* one to be affected *by the judgment* in the particular case, and not merely an interest, pecuniary or other, in the question involved, but not in the result of the particular case, and which, though not precluded by the judgment therein, may be affected by the 'general operation of law on the *status* fixed by the decision.' Judge Taylor not only had no pecuniary in-

terest in the result of this contestation, but he had no interest whatever that could be affected by any possible determination of the issues involved. . . . It is the opinion of the court, however, that under the doctrines of the common law, aside from our constitutional and statutory provisions, he had such a personal interest in the questions involved in the contestation of Medlin, in the nature of things,—such a bias in favor of one of the parties to the case,—as disqualified him to hear and determine the same, and justified his action in declining so to do. *Gill v. State,* 61 Ala. 169, and authorities there cited.''

The judgment of the trial court denying the application for mandamus was affirmed.

The record in the instant case discloses an unusual and novel situation. The trial judge was a candidate for renomination by his party at the same primary at which it is alleged respondents were guilty of misconduct. Their alleged acts of misbehavior directly affected his candidacy. It was charged that defendants as officials acquiesced in the conduct of persons who erased the crosses on ballots in the square before the name of the trial judge and made crosses in the square opposite the name of his opponent. It is manifest the trial judge was intensely interested in these alleged actions. We have recited the facts, and comment, we think, is not required. There was no reason why the cases against these respondents should not have been tried by another judge. We hold the record shows he was disqualified.

In *Moses v. Julian,* 45 N. H. 52, the opinion classifies cases whereby judges may be disqualified under both common and civil law. Judges, it is said, '' . . . ought to mistrust themselves, and not draw upon themselves the just reproach of a rash proceeding, which would be in effect a real misdemeanor. Domat Pub. Law, Lib. 2, Tit. 1, sec. 2.14.''

In *Regina v. Justices of Suffolk,* Eng. Law & Equity Reports, Vol. 14, p. 90, it appeared a justice of the

Quarter Sessions was also a rated inhabitant of the appellant parish. He had taken no part in the decision but remained in court until a final decision favorable to the parish was made. The Lord Chief Justice said:

"I am glad for the sake of the due administration of justice in courts of Quarter Sessions that this application has been made. The proceeding which here took place is much to be censured. . . . He did not vote because there was no voting at all, but he still formed a member of the court, and his interference vitiated the proceedings, and there is no ground for saying that it was acquiesced in."

In *Dimes v. Grand Junction Canal Co.,* Eng. Law & Equity Reports, Vol. 16, p. 63, it appeared the Lord Chancellor had a slight interest in land involved in the suit. Lord Campbell said:

"No human being can suppose for an instant that my Lord Cottenham could be in the remotest degree influenced by the infinitestimally small interest that he had in this concern, nor if his interest had been ever so great; but, my lords, it is of the last importance that that maxim should be held sacred, that no man is to be a judge in his own cause; and that is not to be confined to a cause in which he is a party, but a cause in which he has an interest."

In a recent Federal case, *Schmidt v. United States,* 115 F. (2d) 394, defendants' attorneys were ruled to show cause and found guilty of contempt. On appeal it was urged the trial judge should have declined to hear the case because affidavits of prejudice had been filed against him which were stricken. The court of appeals said:

"Appellant Schmidt urges that the judge should have withdrawn from consideration of the case against him, on the ground that judicial impartiality had been blurred by personal factors. Appellant Mau does not directly make the point but we feel that the feature is inherent in both cases. . . . The judge should not have been required to try the contempt

cases, while he was confronted with the affidavits of bias and prejudice to which appellants had appended their certificates of good faith. This is no reflection upon the judge, nor upon any judge so confronted. Even a judge may not put aside the propensities of human nature as easily as he does his robe. . . . We do not adjudge that any unfairness permeated the trial of these cases, but to eliminate the 'chance' that such existed, the judgment should be reversed and the cases remanded for further proceedings before another judge.''

The law books are full of cases both in England and in the United States where the most distinguished judges recusing themselves have refused to sit in cases where they might possibly be considered to have personal bias or interest. It is unnecessary to review the cases. As illustrating we cite *In Re Neagle,* 135 U. S. 1, where Mr. Justice FIELD did not sit at the hearing or take part in the decision, and *Illinois Cent. R. Co. v. Illinois,* 146 U. S. 387, where Chief Justice FULLER and Mr. Justice BLATCHFORD likewise declined to take part in the case.

Because the trial judge was a candidate for office at the primary in which these respondents are charged to have committed offenses and was therefore personally interested, the judgments against them will be reversed and their causes remanded with directions that the same be assigned for trial to another judge.

*Reversed and remanded with directions.*

O'CONNOR, P. J., and McSURELY, J., concur.